UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                         Plaintiff,<br>v.<br><br>MARIO CALDERON,<br><br>                         Defendant. | Case No.: 24cr502-JM-2<br><br>**ORDER ON MOTION TO ACCEPT BOND**<br><br>(Doc. No. 42) |

Presently before the court is Defendant Mario Calderon's "Motion to Accept Bond." (Doc. No. 42). The court heard oral argument on Defendant's Motion on June 3, 2024 and June 10, 2024. (Doc. No. 48). The matter was thereafter taken under submission. Having considered the Parties' arguments, the evidence, and the law, the court rules as follows.

## BACKGROUND

**I.    Underlying Case**

On March 26, 2024, Defendant Mario Calderon was arrested after being charged in a two-count indictment with violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. No. 1). The indictment alleges that on June 6, 2023 and June 21, 2023, Defendant

1

knowingly and intentionally distributed a mixture and substance containing a detectable amount of methamphetamine. *Id.* at 1–2.

## II. Initial Pretrial Release Conditions

On March 27, 2024, Defendant appeared before the Magistrate Judge for an initial appearance. (Doc. No. 14). At the hearing, the Magistrate Judge set pretrial release conditions, including a $25,000 personal appearance bond secured by the co-signatures of two financially responsible adults—one of whom had to be related to Defendant—along with a $1,500 financial deposit. (Doc. Nos. 13; 14; 39 at 11:16–19).

## III. Modification of Pretrial Release Conditions

On April 16, 2024, the Parties appeared before the Magistrate Judge again on Defendant's request to modify the conditions of his pretrial release. (Doc. Nos. 20; 40). Among other things, Defense counsel requested Defendant's pretrial conditions be modified to a $20,000 personal appearance bond, secured by a single signatory, along with a $1,000 financial deposit. (Doc. No. 40 at 3:12–4:8). The government did not object to Defendant's requested modifications. *Id.* at 5:10–7:6.

At the hearing, the Magistrate Judge noted she "would not have agreed" to the requested modification as Defendant represented a "substantial risk of flight" in light of his long-standing drug addiction issues and history of noncompliance and failures to appear. *Id.* at 8:2–14. Nevertheless, the Magistrate Judge found that if the government supported the requested modification—the court would agree to it. *Id.* at 8:15–20. For these reasons, Defendant's pretrial conditions were modified to a $20,000 personal appearance bond, secured by a single financially responsible and related surety, along with a $1,000 cash deposit. (Doc. No. 30).

## IV. Defendant's Request to Magistrate Judge to Accept Bond Packet

On April 22, 2024, Defendant provided a bond packet to the government, to which the government objected. (Doc. Nos. 33 at 2; 35 at 3). In response, Defendant filed a "Motion to Accept Bond," requesting that the Magistrate overrule the government's objections. (Doc. No. 33 at 4). As set forth in the government's Opposition, the

government objected on the grounds that Defendant had failed to submit sufficient information to demonstrate Defendant's father qualified as a financially responsible adult for purposes of securing the personal appearance bond in this case. (Doc. No. 35 at 3–4).

On April 25, 2024, the Magistrate Judge heard argument on Defendant's Motion. (Doc. No. 41). At the hearing, the Magistrate Judge clarified she had modified Defendant's pretrial release conditions only in light of the government's lack of opposition, but she had not: (1) reviewed or approved Defendant's bond packet; (2) approved any specific individual to serve as Defendant's financial surety; or (3) made any independent determination about whether Defendant's father satisfied as a financial surety. *Id.* at 2:23–3:11; 5:2–6:3. The Magistrate Judge then denied Defendant's Motion on the grounds that Defendant's father failed to meet the bond conditions she had set. *Id.* at 17:15–18:10.

**V.    Defendant's Request to the Undersigned to Accept Bond Packet**

On May 6, 2024, Defendant filed the instant "Motion to Accept Bond." (Doc. No. 42). The government filed an Opposition on May 20, 2024. (Doc. No. 44). The court held a hearing on Defendant's Motion on June 3, 2024. (Doc. No. 48). Essentially, Defendant argues the Magistrate Judge committed legal error when she concluded Defendant's father failed to qualify as a financially responsible surety and consequentially denied Defendant's Motion to Accept Bond Packet.

Per the court's invitation, both Parties filed supplemental briefing on Defendant's Motion. (Doc. Nos. 47; 50). The court held a second hearing on Defendant's Motion on June 10, 2024, at which time it took the matter under submission. The court now considers the instant matter fully briefed and ripe for resolution.

///
///
///
///
///

# LEGAL STANDARD

Section 3145(a) of the Bail Reform Act "sets out the proper recourse for review of a release order," *United States v. Fidler*, 419 F.3d 1026, 1028 n.1 (9th Cir. 2005), and states:

> If a person is ordered released by a magistrate [United States magistrate judge], or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court—
>
> …
>
> (2) the person may file, with the court having original jurisdiction over the offense, a motion for amendment of the conditions of release.

18 U.S.C. § 3145(a).

Under Ninth Circuit precedent, a district judge reviews a magistrate judge's bail order *de novo*. *See United States v. Koenig*, 912 F.2d 1190, 1192 (9th Cir. 1990). Even so, a district judge "is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *Id.* at 1193. However, the district judge should still "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.*; *United States v. Johnson*, No. 18CR4955-H, 2020 U.S. Dist. LEXIS 77157, at *4 (S.D. Cal. May 1, 2020) (reviewing *de novo* Magistrate Judge's bail order).

# ANALYSIS

## I.  The Magistrate's Bail Order

The court first begins by considering the Magistrate Judge's Bail Order. Here, it was not legally erroneous for the Magistrate Judge to conclude Defendant's bond packet did not satisfy the pretrial release conditions she had set.

As noted above, the Magistrate Judge set a $20,000 appearance bond in this case to be secured by the signature of one financially responsible, related adult. (Doc. Nos. 30; 41 at 17:16–19). This was not legal error. Indeed, there can be no doubt the Bail Reform

Act permits a magistrate judge to set a bail bond with solvent sureties. As the government correctly points out, under 18 U.S.C. §3142(c)(1)(B)(xii), the court may include as a condition of release, that a defendant:

> [E]xecute a bail bond with solvent sureties; who will execute an agreement to forfeit in such amount as is reasonably necessary to assure appearance of the person as required and shall provide the court with information regarding the value of the assets and liabilities of the surety if other than an approved surety and the nature and extent of encumbrances against the surety's property; such surety shall have a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond[.]

18 USCS § 3142 (c)(1)(B)(xii).

Nor was it unreasonable for the Magistrate Judge to do so in this case. Here, Defendant is charged with a serious offense. Indeed, because Defendant is charged with an "'offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act,' 21 U.S.C. § 801 *et seq.*, there is a presumption of detention. 18 U.S.C. § 3142(e)(3)(A)." *United States v. Cortes*, No. 2:23-cr-00025-TL-5, 2023 U.S. Dist. LEXIS 69496, at *4–5 (W.D. Wash. Apr. 20, 2023); *see* Doc. No. 50 at 3. Nevertheless, the government requested that pretrial conditions be set at the initial appearance. (Doc. No. 40 at 5:10–17).

It was also not legal error for the Magistrate Judge to reject Defendant's bond packet based on her reasonable conclusion Defendant's father lacked the financial wherewithal to satisfy a $20,000 personal appearance bond. Defense counsel conceded Defendant's father did not possess assets amounting to $20,000 that the government could seize. (Doc. No. 41 at 13:23–14:3). While the Magistrate Judge was provided some evidence of the proposed surety's earning capacity and social security earnings, she

was never accorded the opportunity to conduct a Nebbia hearing to assure her that Defendant's father understood the risks and would be able to pay the bond.[1]

Neither can the court fault the Magistrate Judge's rationale in rejecting the bond packet—which was motivated, in part, by Defendant's nine-year criminal history and troubling record of failing to appear in multiple cases where significant charges were levied against him. (Doc. Nos. 31; 40 at 8:2–14).[2] Defendant's contention these previous cases merely involved "minor" offenses—while the instant case represents a more "serious" offense—is not persuasive. Defendant's history of non-compliance is clear cut and not to be downplayed.

For these reasons, in light of the limited record before her, the court does not find the Magistrate Judge erred in rejecting Defendant's bond packet.

## II.   This Court's Independent Determination

Despite the court's conclusion the Magistrate Judge did not legally err, it continues on with proper jurisdiction to make an independent determination as to whether Defendant's bond packet should be accepted.

At the outset, the court notes nothing in the Bail Reform Act "*requires* the court to have a bond with solvent sureties." *United States v. Beckett*, No. CR 11 70451 MAG (LB), 2011 U.S. Dist. LEXIS 49414, at *10 (N.D. Cal. Apr. 28, 2011); *see also United States v. Conway*, No. 4-11-70756 MAG (DMR), 2011 U.S. Dist. LEXIS 86034, at *10–11 n.2 (N.D. Cal. Aug. 3, 2011); *United States v. Powell*, No. CR-10-00292-CW (DMR), 2010 U.S. Dist. LEXIS 69540, at *7 (N.D. Cal. June 21, 2010).

---

[1] On June 10, 2024, this court independently conducted a Nebbia hearing, where it was disclosed Defendant's father does indeed maintain a bank account into which his social security benefits are deposited. This was yet another consideration that was not before the Magistrate Judge, which, in some measure, was the basis for the Government's Opposition to Defendant's Motion to Accept Bond.

[2] Defendant still have two active failures to appear and outstanding fines.

Instead, under the Bail Reform Act, 18 U.S.C. § 3142, a court "shall order the pretrial release" of a defendant "on personal recognizance, or upon execution of an unsecured appearance bond in an amount specified by the court . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). The Act "requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Id.*

The court is, therefore, reluctant to impose conditions whereby individuals without immediate access to financial or liquid assets—such as Defendant and his family here—lack a meaningful avenue toward pretrial release. In the court's view, this would run counter to the Bail Reform Act's mandate that a "judicial officer may not impose a financial condition that results in the pretrial detention of the person," 18 USCS § 3142(c)(2), and the Ninth Circuit's directive that pretrial release should be denied only in rare circumstances.

Based on the record now before it, including the responses Defendant's father made under oath at the June 10, 2024 hearing, the court is satisfied Defendant's father possesses the financial capacity to make payments on the bond in light of his: (1) past earnings; (2) current and future earning capacity; (3) social security benefits; and (4) assets. The court is also confident Defendant and his father both understand the risks of having his father sign on as a surety to this appearance bond. As the court explained to both, in the event of a violation, the government would be able to obtain a civil judgment against Defendant's father. Even if Defendant's father does not currently possess $20,000 in a bank account or other assets *now,* he would still be at risk to suffer real and long-lasting financial harm if Defendant absconded, failed to appear at a future hearing as

requested, or violated any of the pre-trial conditions of his bond. The court is also satisfied, based on the responses Defendant's mother made under oath at the same June 10, 2024 hearing, that Defendant's mother understands the grave responsibilities she has agreed to and can adequately serve as Defendant's third-party custodian.

In the end analysis, the court finds that the pretrial release conditions imposed by the Magistrate Judge, and the bond packet submitted by Defendant, mitigate the risks of Defendant's nonappearance. Weighing in favor of Defendant's release on conditions are Defendant's longstanding ties to San Diego, including his father, who qualifies as a financially responsible adult, mother, long-term partner and three children. While it is true Defendant has been accused of a serious offense, has substance abuse issues, and also a history of failing to appear in court proceedings, he, nevertheless, has also proffered a financially responsible and related adult, his father, who has voluntarily signed the appearance bond in this case and put himself at significant financial risk. The court finds this bond creates adequate moral suasion and incentive for Defendant to comply with the conditions of his release. More importantly, the bond contains the least restrictive conditions that will assure Defendant's appearance and the safety of the community.

## CONCLUSION

For the reasons stated above, this court **ACCEPTS** Defendant's bail packet and **ORDERS** Defendant be released pursuant to the pretrial release conditions imposed by the Magistrate Judge. More specifically, pursuant to the June 10, 2024 hearing, this court **ORDERS** that Defendant be released to a family member no later than **9:00 a.m.** on **June 11, 2024** for immediate transportation and entrance to the CRASH residential drug treatment program. Pretrial Services is instructed to meet Defendant at CRASH for treatment. Thereafter, upon completion of the CRASH program, Defendant is to be immediately transported to his home where he will be under the custodianship of his mother.

///

` This court further **REMANDS** the case to the Magistrate Judge for any future matters regarding pretrial supervision.

**IT IS SO ORDERED.**

DATED: June 10, 2024

_____
JEFFREY T. MILLER
United States District Judge